UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PACIFIC SHORES PROPERTY
OWNERS ASSOCIATION, et al.,

    Petitioners,

    v.

FEDERAL AVIATION
ADMINISTRATION, et al.,

    Respondents.

_____/

No. C 13-2827 PJH

**ORDER GRANTING MOTION
TO DISMISS AND MOTION
FOR JUDGMENT ON THE
PLEADINGS**

    The motions of respondents/defendants to dismiss the petition and for judgment on the pleadings came on for hearing before this court on February 19, 2014. Petitioners/plaintiffs appeared by their counsel Kelly Smith; respondent/defendant Federal Aviation Administration ("FAA") appeared by its counsel Michael Pyle; respondent/defendant Border Coast Regional Airport Authority ("Authority") appeared by its counsel Autumn Luna; and the defendant-intervenors appeared by their counsel Jacqueline Iwata and Deborah Sivas. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motions as follows.

## INTRODUCTION

    Petitioners/plaintiffs Pacific Shores Property Owners Association and William A. Ritter (collectively, "PSPOA") filed the present action on June 16, 2013 as a petition for writ of mandate, and also seeking injunctive relief and damages. The Authority answered the petition, and the FAA moved to dismiss the sole cause of action asserted against it. The

court granted the motion, with leave to amend. The court also granted the motion of Northcoast Environmental Center, Smith River Alliance, and five individual landowners for leave to intervene as defendants. PSPOA filed a first amended petition and complaint ("FAC") on December 17, 2013.

## BACKGROUND

The Pacific Shores Property Owners Association is an association of private owners of parcels in the Pacific Shores Subdivision ("the Subdivision"), which is located in Del Norte County, California, and was approved and recorded in 1963 with 1,535 lots on 1,486 acres. PSPOA alleges that in preparation for future development, a 26-mile road system, and drainage and flood control improvements were constructed within the Subdivision, and electrical lines were brought to the main road.

According to respondents/defendants, however, the area consists of low-lying coastal dunes that are essentially undevelopable. Moreover, no infrastructure has been developed in 50 years, there is no sewer system or water delivery system serving the lots, septic tanks are not permitted because the soil is sand and the groundwater is close to the surface, and the few structures that are located there are trailers with no apparent sanitation systems.

PSPOA asserts that beginning in the mid-1980s, agencies of the State of Califonria and the County of Del Norte began "manipulating the surface elevation" of Lake Earl, the lagoon adjacent to the Subdivision. By allowing the surface of the lake to rise, and preventing efforts to divert the water, they allegedly caused episodic flooding of the Subdivision. In 2006, certain Subdivision property owners filed an inverse condemnation suit, Smith v. Department of Fish & Game, Case No. 07AS01516 (Superior Court, County of Sacramento). The trial court ruled in favor of those plaintiffs for damages from the physical flooding of the Subdivision. Both sides appealed.[1]

According to its website, the Authority is a Joint Powers Authority with a Board of

---

[1] The first notice of appeal was filed in the trial court on January 12, 2012, and the appeal was fully briefed on January 30, 2014.

2

Directors comprised of representatives from Del Norte County, the City of Crescent City, the Elk Valley Rancheria, Smith River Rancheria, the City of Brookings, Oregon and Curry County, Oregon.  It operates the Del Norte County Regional Airport ("the Airport"), also known as Jack McNamara Field.

In June 2000, the FAA completed an evaluation of the Airport's existing runway safety areas, and concluded that they did not meet applicable FAA design standards.  As part of the 2005 appropriations bill for the Department of Transportation, Congress required all commercial airports to come into compliance with FAA design standards for runway safety areas by the end of 2015, and allocated federal funding to assist local airports with the needed improvements.  Consequently, approximately five years ago, the the Authority initiated the Runway Safety Area Improvement Project.

In July 2009, the Authority filed a Notice of Preparation with the Governor's Office of Planning and Research, formally initiating the review mandated under the California Environmental Quality Act ("CEQA").  In 2010, consistent with the Notice of Preparation, the Authority drafted a plan that discussed the possibility of purchasing lots from Pacific Shores Subdivision landowners to use as mitigation for the wetlands that would be lost because of the Runway project.

The Authority submitted the Notice of Completion of the Draft EIR (Environmental Impact Report) to the State on February 25, 2011, listing the Subdivision as a potential wetland mitigation site.  In March 2011, the Authority held a public meeting to discuss the Draft EIR.  In December 2011, the Authority's Board of Commissioners approved the Runway Safety Project, and filed a Notice of Determination with the State (the final decision document under CEQA).

PSPOA claims that the expansion plans and supporting EIR did not specifically describe how the environmental impacts of the runway and terminal project would be mitigated, as required under CEQA.  PSPOA alleges that prior to the time that the airport runway and terminal project EIR was certified, the Subdivision property-owners had received no notice that their properties, some distance away, were being evaluated as a

mitigation alternative for the airport expansion impacts. PSPOA asserts that it was only after they "inadvertently" discovered in December 2012 that the County Board of Supervisors was taking steps to use Subdivision roads as mitigation that any owners of the affected lots had any idea that subdivision roads were being considered for "removal."

PSPOA contends that the Authority then scheduled a meeting to disclose the Pacific Shores Subdivision "road removal plan" to the property owners. The meeting was held on February 13, 2013. PSPOA claims that at the meeting, the land owners were told that an environmental analysis of the "Pacific Shores mitigation" would be conducted, that the roads considered for "removal" would be disclosed, and that the analysis would be completed before the alternative was adopted.

PSPOA asserts, however, that the Authority later considered in closed session an appraiser's estimate of the values of the lots. This appraiser had allegedly previously conducted similar appraisals for the state agencies that had sought to acquire the Subdivision lots to create a state park, and had worked with local environmental groups. PSPOA contends that the appraisals failed to include proper comparable valuations, and instead used one valuation for all the lots without consideration of individual values.

PSPOA also alleges that notwithstanding the promise by the Authority to conduct an environmental review of the proposed road closures and property purchases, no such review has ever been conducted; and that the Authority has indicated on the one hand that other alternatives to the mitigation would be pursued, while at the same time has proceeded with the "road closure" and "lot acquisition."

PSPOA asserts that it was not until September of 2013 that the Authority formally and officially approved a mitigation project necessary to comply with the Coastal Commission coastal development permit which had been conditionally approved only the month before that. However, PSPOA alleges, it did so without adoption of the "EIR addendum" promised earlier.

In the FAC, PSPOA asserts five causes of action – (1) a claim of violation of the Uniform Relocation Assistance and Real Property Acquisition Policies for Federal and

4

Federally Assisted Programs ("Uniform Relocation Assistance Act" or "URA"), 42 U.S.C. § 4601, et seq., against the FAA and the Authority; (2) a claim under 42 U.S.C. § 1983 for violation of the Takings Clause of the Fifth Amendment, and the Due Process Clause of the Fourteenth Amendment, against the Authority; (3) a claim for inverse condemnation damages, against the Authority; (4) a claim of violation of CEQA, Cal. Govt. Code § 21000, et seq., against the Authority; and (5) a claim of violation of the Constitutional prohibition against private gifts of public money, Cal. Const. Art. XVI, § 6, against the Authority.

The FAA now seeks an order dismissing the one claim asserted against it, for lack of subject matter jurisdiction and failure to state a claim. The Authority and the defendant-intervenors seek judgment on the pleadings as to all causes of action alleged in the FAC.

**DISCUSSION**

A.   Legal Standards

  1.   Motions to dismiss for lack of subject matter jurisdiction

Federal courts are courts of limited jurisdiction, possessing only that power authorized by Article III of the United States Constitution and statutes enacted by Congress pursuant thereto. See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986); see also Chen-Cheng Wang ex rel. United States v. FMC Corp., 975 F.2d 1412, 1415 (9th Cir. 1992). The court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction. Spencer Enters., Inc. v. United States, 345 F.3d 683, 687 (9th Cir. 2003); Attorneys Trust v. Videotape Computers Prods., Inc., 93 F.3d 593, 594-95 (9th Cir. 1996). The burden of establishing that a cause lies within this limited jurisdiction rests upon the party asserting jurisdiction. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994); Tosco Corp. v. Communities for a Better Env't, 236 F.3d 495, 499 (9th Cir. 2001).

  2.   Motions to dismiss for failure to state a claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom

5

Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted).

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See id. at 558-59. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679.

The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and quotations omitted). Thus, where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

6

3.      Motions for judgment on the pleadings

A motion for judgment on the pleadings pursuant to Rule 12(c) "challenges the legal sufficiency of the opposing party's pleadings." William Schwarzer et al, Federal Civil Procedure Before Trial ¶ 9:316 (2010); Fed. R. Civ. P 12(c). The legal standards governing Rules 12(c) and 12(b)(6) are "functionally identical," Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989), as both permit challenges directed at the legal sufficiency of the parties' allegations. See also Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012). Thus, a judgment on the pleadings is appropriate when the pleaded facts, accepted as true and viewed in the light most favorable to the non-moving party, entitle the moving party to a judgment as a matter of law. Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1301 (9th Cir. 1992); see also Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009).

The standard articulated in Twombly and Iqbal applies equally to a motion for judgment on the pleadings. Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054-55 & n.4 (9th Cir. 2011); see also Lowden v. T-Mobile USA, Inc., 378 Fed. Appx. 693, 694, 2010 WL 1841891 at *1 (9th Cir., May 10, 2010) (to survive a Rule 12(c) motion, "a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face'" (quoting Twombly, 550 U.S. at 544)).

B.      The FAA's Motion

The FAA seeks an order dismissing the first cause of action for lack of subject matter jurisdiction and failure to state a claim. In the first cause of action, PSPOA alleges that the FAA is required to administer and monitor the URA, for projects it funds (including the "airport mitigation" project), and that it failed to do so, in violation of 42 U.S.C. § 4655.

In relevant part, § 4655 provides that "the head of a Federal agency shall not approve any program or project or any grant to, or contract or agreement with, an acquiring agency under which Federal financial assistance will be available to pay all or part of the cost of any program or project which will result in the acquisition of real property" unless he/she "receives satisfactory assurances from such acquiring agency" that in acquiring property the agency "will be guided, to the greatest extent practicable under State law, by

the land acquisition policies in section 4651 . . . the provisions of section 4652," and that "property owners will be paid or reimbursed for necessary expenses as specified in sections 4653 and 4654."  See 42 U.S.C. § 4655(a).

PSPOA interprets § 4655 as requiring the FAA to "administer and monitor" the URA for projects it funds, including the project at issue here, and alleges that in connection with this requirement the FAA "was asked" (by PSPOA) to "provide proof" that it had complied with § 4655's requirement for adequate assurance that it had complied with the URA in connection with the Pacific Shores "mitigation project," but failed to provide "proof" that PSPOA considered "satisfactory."

PSPOA asserts that on November 20, 2013, the FAA's attorney provided them with documents purporting to show FAA compliance with § 4655.  These documents included a September 10, 2012 "Grant Agreement," signed by the FAA and Authority officials, and the 36-page "Terms and Conditions" for accepting grants executed by the Authority's executive director on June 18, 2012.  PSPOA contends that those documents included "boilerplate provisions whereby the signees, including the Authority, consented to the requirements of § 4651 and the Act."

PSPOA claims that between June 2012 (when the FAA received the "boilerplate 'assurances'") and the actual September 2013 approval of the "mitigation project," the Authority had solicited sales from Pacific Shores Subdivision property owners by letter. PSPOA contends that the sales were solicited by the Authority with the intent "that they would be funded by the FAA."  It is the solicitation of those sales that PSPOA claims did not comply with the requirements of § 4651, in that owners were given no role in the appraisal of their properties, since "they knew nothing about it."

PSPOA asserts that because the "boilerplate assurances" were provided before the mitigation project plan, designs, acquisitions intended, or appraisals were submitted to the FAA, the FAA has not received "satisfactory assurances" under § 4655 for the Pacific Shores "mitigation project."  However, PSPOA does not allege that the FAA has actually "approved" a project or program under which federal financial assistance will be provided.

8

PSPOA contends that the "boilerplate assurances" were not "satisfactory" for the further reason that they either were disregarded by the Authority when it designated its "mitigation project," or were not understood by the Authority such that it failed to comply with the provisions of § 4651, or were not considered at the time the Authority solicited purchase agreements for the "mitigation project." PSPOA asserts that the assurances were also not "satisfactory" because the Authority by its actions towards the owners "has shown that it will violate the most fundamental provision of § 4651 by forcing property owners to this [c]ourt to seek redress of their constitutional property rights."

In its motion, the FAA argues that neither the URA nor its corresponding regulations provide for a private right of action, and thus, the court lacks subject matter jurisdiction over this claim. In addition, the FAA asserts that PSPOA has not alleged sufficient facts against the FAA to state a claim, and moreover, that the claim is contrary to documents subject to judicial notice, which show that the FAA did comply with § 4655 of the Act.

First, the FAA contends that § 4655 of the URA does not provide a private right of action by which PSPOA can hold the FAA liable for an alleged failure to receive satisfactory assurances. The FAA asserts that it is PSPOA's burden to establish that the United States has waived its sovereign immunity with regard to the URA. Citing to the language of § 4655, the FAA argues that the only obligation on the federal agency under § 4655 is to receive satisfactory assurances from the acquiring agency (here, the Authority). The remainder of § 4655 puts obligations on the acquiring agency, not on the FAA.

The FAA asserts that § 4655 of the URA is phrased as a directive to federal agencies engaged in the distribution of public funds, and there is nothing in the text of § 4655 that evidences creation of a private right of action or remedy as against the FAA. The FAA adds that while older cases may have been more liberal in locating a private right of action, more recent cases such as Gonzaga Univ. v. Doe, 536 U.S. 273, 280 (2002), Alexander v. Sandoval, 532 U.S. 275, 286 (2001), and San Carlos Apache Indian Tribe v. United States, 417 F.3d 1091, 1094-97 (9th Cir. 2005) have held that the court must find an

9

intent in the statute in question to create a private right of action <u>and</u> a private remedy. The FAA asserts that without a private right of action, petitioners/plaintiffs are unable to sue the FAA under the Act, and thus this court does not have jurisdiction over the only claim that has been alleged against the FAA.

Second, the FAA argues that even if there were a private right of action under § 4655, the FAC does not allege sufficient facts to state a claim. The FAA contends that the supposedly "factual allegations" in the FAC are better described as conclusions than as facts, noting that PSPOA concedes that its counsel received two documents in November 2013 from FAA counsel, but then asserts that the "assurances" in the documents are simply "boilerplate" and claims that "satisfactory assurances" must include more than "boilerplate."

In opposition, PSPOA argues that under <u>Lathan v. Volpe</u>, 455 F.3d 1111, 1125 (9th Cir. 1971), <u>overruled on other grounds</u>, <u>Lathan v. Brinegar</u>, 506 F.2d 677, 691 (9th Cir. 1974), the URA does provide a private right of action. PSPOA also cites <u>Whitman v. State Highway Commission of Missouri</u>, 400 F.Supp. 1050, 1058-59 (W.D. Mo. 1975), and <u>La Raza Unida v. Volpe</u>, 337 F.Supp. 221 (N.D. Cal. 1971) in support of its argument. In addition, PSPOA argues that the court has "primary jurisdiction" under the Administrative Procedures Act, 5 U.S.C. §§ 702 and 704.

PSPOA contends that the language of § 4655 clearly indicates an intent to protect the private property rights of owners being acquired – that the express language of the statute creates a private right of action by property owners that the "acquiring agency" (here, the Authority) will be required to comply with § 4651, and "will be paid or reimbursed" pursuant to § 4652 and § 4653. PSPOA argues that these are explicitly personal rights of the owners whose property is being condemned.

With regard to the motion to dismiss for failure to state a claim, PSPOA responds that the documents provided by the FAA simply provide "written assurance" that the Authority will comply with federal acquisition rules, but that "written assurance" is not the same as "satisfactory assurance." Moreover, PSPOA argues, the facts alleged in the FAC

10

relate to the Authority's "project" to acquire Pacific Shores Subdivision roads and lands long after the plans submitted in the FAA-offered documents, which it asserts is "a different project" that was "never provided proper environmental study" and "never even noticed to the owners of Pacific Shores until long after the airport runway plans were submitted" by the Authority to the FAA.

In its reply, the FAA makes two main arguments – that the URA does not provide a private right of action under § 4655; and that the FAA is satisfied with the assurances it received from the Authority.

First, with regard to whether there is private right of action under § 4655, the FAA asserts that the Ninth Circuit's decision in Volpe is not determinative, as it did not involve § 4655; that Whitman is not applicable, as it held that the documents provided by the state agency provided sufficient assurances, and that in any event, the court had jurisdiction under the APA to review the federal agency determinations; that none of the other cases cited by PSPOA establishes a private right of action under § 4655; and finally, that under recent Supreme Court jurisprudence (in particular, Gonzaga and Sandoval), courts must determine whether the statute in question displays a clear congressional intent to create not just a private right but also a private remedy.

The FAA contends that as against the federal government, § 4655 requires only that the agency receive satisfactory assurances, and imposes no substantive requirements on the federal agency and cannot be read as creating a right to private enforcement or a private remedy. Rather, the FAA asserts, the remedy for a violation of the URA by the Authority would be for the FAA to withhold further federal funding, per § 4604(a) and (c)(1). Finally, the FAA argues that because § 4655 is phrased as a directive to federal agencies engaged in the distribution of public funds, there is far less reason to infer a private remedy in favor of individual persons (citing Cannon v. Univ. of Chicago, 441 U.S. 677, 690-91 (1979); San Carlos, 417 F.3d. 1091 (9th Cir. 2005)).

In its second main argument, the FAA contends that it has received satisfactory assurances from the Authority (citing to the documents it provided to PSPOA on November

11

20, 2013), and that there is thus no basis for PSPOA's URA claim.

The court finds that the motion must be GRANTED. The URA was created "in order to encourage and expedite the acquisition of real property by agreements with owners, to avoid litigation and relieve congestion in the courts, to assure consistent treatment for owners in the many federal programs, and to promote public confidence in federal land acquisition practices . . . "  42 U.S.C. § 4651.

The URA consists of three subchapters. Subchapter I (§§ 4601-4605) is entitled "General Provisions." Subchapter II (§§ 4621-4638) is entitled "Uniform Relocation Assistance," and relates to moving expenses and replacement housing for homeowners and tenants who are displaced by federal land acquisition. Subchapter III (§§ 4651-4655), at issue in the present litigation, is entitled "Uniform Real Property Acquisition Policy."  It creates guidelines for federal agencies to apply in land acquisition proceedings.

The sections of Subchapter III that are relevant to the present motion are § 4651 and § 4655.[2] Section 4651 sets forth nine separate practices and policies by which federal agencies should be guided during land acquisitions. 42 U.S.C. § 4651. However, § 4602 provides that § 4651 "create[s] no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation." 42 U.S.C. § 4602. Therefore, the URA itself plainly indicates that § 4651 does not create a right of action on the part of landowners.

Section 4655 makes the provisions of the preceding sections of Subchapter III, including § 4651, obligatory upon the states as a condition to the receipt of federal financial assistance. Thus, § 4655 incorporates the provisions of §§ 4651-4654 against the states.

The question here is whether there is a private right of action under § 4655, and if

---

[2] Of the remaining three sections in Subchapter III, § 4652 sets set forth a method for compensation to be paid to the owner of a structure or building that occupies real property acquired through eminent domain; § 4653 involves compensation and reimbursement to the owner of property acquired for certain expenses involved in the transfer of title to the United States in a condemnation proceeding; and § 4654 involves payment by the acquiring agency of certain litigation expenses in limited circumstances, in actions by federal agencies to acquire title to real property by condemnation. Given that there are no formal condemnation or eminent domain proceedings at issue here, none of these three sections is applicable.

12

so, whether PSPOA has stated a claim. The fact that a federal statute may have been violated and some person harmed "does not automatically give rise to a private cause of action in favor of that person." Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979).

The Ninth Circuit's Lathan v. Volpe decision indicates that there may be a private right of action under Subchapter II of the URA. See id., 455 F.2d 1111, 1125 (9th Cir. 1971), overruled on other grounds by Lathan v. Brinegar, 506 F.2d 677, 691 (9th Cir. 1974). However, § 4655, the section at issue here, is part of Subchapter III, not Subchapter II. Thus, the Volpe decision is of no assistance in this analysis.[3]

Given that there is no private right of action under § 4651, the court finds that there can be no private right for landowners to assert a claim against the federal government for allegedly failing to obtain "satisfactory assurances" that a state agency has complied with § 4651. See Clear Sky Car Wash, LLC v. City of Chesapeake, Virginia, 910 F.Supp. 2d 861, 874-75 (E.D. Va. 2012) (citing City of Chesapeake, Virginia v. Clear Sky Car Wash, LLC, 2012 WL 3866508 at *3-6 (E.D. Va. Sept. 5, 2012)).

If § 4655 were construed as allowing for a private right of action, the practical effect would be that a landowner would have the right under the URA to seek review of state agency action, but would be barred by § 4602 from seeking review of federal agency action. This would create the anomaly that the court "lacks subject-matter jurisdiction to review compliance with § 4651 under one section, but has . . . the requisite jurisdiction to review such compliance under another." Nelson v. Brinegar, 420 F.Supp. 975, 978 (E.D. Wis. 1976), quoted in City of Chesapeake, 2012 WL 3866508 at *3.[4]

---

[3] Similarly, La Raza Unida, cited by PSPOA (and involving a challenge to a federal-aid highway project during the course of which the state acquired property by condemnation for a right-of-way, but failed to provide satisfactory relocation assistance to the displaced owners), was also brought under Subchapter II, not Subchapter III.

[4] The court in Whitman allowed the plaintiff to seek judicial relief under § 4652 and § 4655. Id., 400 F.Supp. at 1059. PSPOA argues that this court should similarly find that it has jurisdiction to review the § 4655 claim. The court is more persuaded by the reasoning in the City of Chesapeake decisions, however. In addition, Whitman is factually distinguishable, as it involved a claim by owners of billboards located on property that had been acquired by state and federal agencies via eminent domain for a highway improvement project. The billboard owners, who leased the land for the billboards from the property owners, sought

Finally, as for PSPOA's argument that the court has "primary jurisdiction" under the APA, the court notes that there is no APA claim pled in the FAC. Moreover, PSPOA made an identical argument in opposing the FAA's prior motion to dismiss, and the court pointed out to counsel at the hearing on that motion that there was no APA claim alleged. Thus, to the extent that PSPOA proposes that the APA provides a jurisdictional basis for the claim, that position is without merit.

As for the motion to dismiss for failure to state a claim, the obligation imposed on the FAA under the statute is to refrain from approving the Authority's runway project under which federal financial assistance will be provided to cover all or part of the cost until the FAA has received satisfactory assurances from the Authority that it will be guided by the land acquisition policies in § 4651 and § 4652, and that the property owners will be paid or reimbursed as specified in § 4653 and § 4654.

Here, PSPOA has not alleged that the FAA failed to obtain any assurances from the Authority before providing funds (or even before approving a "program" or a "project" or "any grant to" or "contract or agreement with" a State agency "under which federal financial assistance will be available"). Nor has PSPOA alleged that any property has been acquired from its members for use in the project.

C. The Authority/Intervenors' Motion

The Authority and the defendant-intervenors (collectively, "defendants") seek judgment on the pleadings. They argue that the first cause of action under § 4655 of the URA should be dismissed because it is not actionable; and that the second cause of action under § 1983 should be dismissed because it is not ripe. They assert that if the court disposes of those two federal causes of action, it should decline to exercise jurisdiction over the remaining three state law claims – the claim for "inverse condemnation damages;" the claim alleging CEQA violations; and the claim alleging violation of the prohibition in the

---

compensation for the loss of the billboards. Id., 400 F.Supp. at 1055-56. Here, the Authority is seeking willing landowners who wish to sell lots in the Pacific Shores Subdivision. There is no allegation that land has been acquired through eminent domain or formal condemnation proceedings.

14

California Constitution against "private gifts of public money." In the alternative, defendants argue that the court should grant judgment on the pleadings because none of the five causes of action states a claim.

1. URA claim

In the first cause of action, the FAC alleges that defendants have violated § 4655 of the URA. Defendants contend, however, that § 4655 does not create a cognizable claim for judicial review. They argue that the only obligation that § 4655 imposes on any agency – federal or state – is for federal agencies to make sure they receive "satisfactory assurances" from state agencies receiving federal assistance. The state agencies must promise that they "will be guided, to the greatest extent practicable under State law, by the land acquisition policies in section 4651," and that "property owners will be paid or reimbursed for necessary expenses as specified in sections 4653 and 4654."

Defendants assert that because under § 4602, there is no cognizable claim under § 4651, there can be no claim of agency failure to comply with § 4651. See Barnhart v. Brinegar, 362 F.Supp. 464, 472-73 (W.D. Mo. 1973). They also contend that – just as the FAA argued in its motion – there is no private right of action under § 4655, because the statute does not provide for one. They argue that here, Congress was explicit that the land acquisition policies set forth in § 4651 are intended only to "guide" state agencies receiving federal funding, and thus are not enforceable in a court of law.

In opposition, PSPOA makes the same arguments it made in opposition to the FAA's motion – primarily that there is a private right of action under the URA (citing Lathan, Whitman, and La Raza Unida). PSPOA also asserts that even if there is no private right of action under § 4655, it has a "clear" right to review of the FAA actions under the APA, including under 5 U.S.C. §§ 702 and 704.

The court finds that the motion must be GRANTED. As set forth above, § 4651 creates no rights or liabilities. Here, PSPOA is attempting to obtain review of § 4651 by means of a claim under § 4655, which provides no private right of action. Moreover, even were it the case that a targeted property owner could properly assert a claim under § 4655,

15

PSPOA has alleged no facts showing that its parcels are subject to any future acquisition effort, or that its parcel owners have been displaced by an eminent domain or condemnation proceeding.

As for PSPOA's argument that it has a right to review under the APA, the court again notes that there is no APA claim pled in the complaint; and further, that PSPOA previously raised this argument in opposition to the FAA's motion to dismiss the claim asserted against it in the original complaint, but still did not seek leave to add an APA claim when it amended the complaint, even after the court pointed out the absence of an APA claim in the complaint.

  2. Section 1983 claims

In the second cause of action, the FAC alleges that the Authority deprived PSPOA of its right to just compensation under the Fifth Amendment of the U.S. Constitution and Art. 1, § 9 of the California Constitution, and its due process rights under the Fourteenth Amendment of the U.S. Constitution. Defendants argue that the takings claim is not ripe for review, and that the due process claim essentially replicates the takings claim and should be dismissed on the same basis.

The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." Nat'l Park Hospitality Ass'n v. Dep't of the Interior, 538 U.S. 803, 808 (2003). The doctrine prevents premature adjudication, and is aimed at cases that do not yet have a concrete impact upon the parties. Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580 (1985). A Fifth Amendment takings claim "is premature until it is clear that the Government has both taken property and denied just compensation." Horne v. Dep't of Agric., 133 S.Ct. 2053, 2062 (2013); see also Levald, Inc. v. City of Palm Drive, 998 F.2d 680, 687 (9th Cir. 1993). In other words, "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Texas v. United States, 523 U.S. 296, 300 (1998) (quoting Thomas, 473 U.S. at 580-81).

For a takings claim to be ripe, a plaintiff must "seek compensation through the

procedures the State has provided" before bringing a claim in federal court, or show that such state procedures are inadequate. Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 194-95 (1985); see also Adam Bros. Farming, Inc. v. County of Santa Barbara, 604 F.3d 1142, 1147-48 (9th Cir. 2010). In California, a plaintiff must bring an inverse condemnation or section 1983 claim through a writ of mandate in state court to satisfy the ripeness requirement of Williamson County. See Carson Harbor Village, Ltd v. City of Carson, 353 F.3d 824, 828 (9th Cir. 2004).

Here, defendants argue, the FAC does not allege that PSPOA sought compensation through state procedures for the alleged unlawful taking of their property by the Authority, or that California's compensation procedures are inadequate. Thus, they contend, PSPOA's § 1983 takings claim is unripe. See Valenciano v. City & County of San Francisco, 2007 WL 3045997, *6 (N.D. Cal. Oct. 18, 2007) (dismissing takings claim because plaintiffs failed to first seek state relief)).

With regard to the due process portion of the § 1983 cause of action, defendants argue that as pled in the FAC, this claim is not separate or different from PSPOA's takings claim. They assert that while the FAC alleges generally that the Authority has violated PSPOA's "due process rights," no such right is specified apart from the right to just compensation. Thus, they contend, any stand-alone due process claim is unripe for the same reasons that the takings claim is unripe. See Harris v. County of Riverside, 904 F.2d 497, 500 (9th Cir. 1990) (claims "arising from an alleged taking may be subject to the same ripeness requirements as the taking claim itself depending on the circumstances of the case").

In its opposition, PSPOA does not respond to defendants' arguments regarding the takings claim – effectively conceding that a property owner cannot pursue a constitutional takings claim until he has pursued his claim through state inverse condemnation proceedings. In its place, PSPOA attempts to insert a § 1983 statutory violation claim, based on a violation of § 4655 of the URA, and argues that this alleged statutory violation sufficiently states a "civil rights" claim under § 1983.

17

With regard to the due process claim, PSPOA argues that it has stated a claim in that the FAC alleges that the FAA allowed the Authority to evade notice to the owners, while the Airport sought FAA funding, which PSPOA claims is sufficient to support a cause of action under § 1983 for violation of due process rights.

The court finds that the motion must be GRANTED.  As noted above, counsel for PSPOA conceded at the hearing that PSPOA has abandoned the takings claim.  The facts alleged in the FAC make clear that the Authority announced a desire to purchase lots within the Pacific Shores Subdivision to use as mitigation for loss of wetlands resulting from the Runway Safety Project, and that it evaluated the fair market value of those lots, engaged in good faith negotiations with certain willing lot owners (not including PSPOA) to sell their lots, and sought regulatory approvals for the mitigation plan.  However, there are no facts alleged showing that the Authority is interested either in exercising its power of eminent domain with respect to PSPOA's property, or in purchasing land from any landowners who are unwilling to sell.  Moreover, PSPOA has not sought "compensation through the procedures the State has provided," as required by Williamson.[5]

PSPOA also does not reasonably dispute that the due process claim essentially replicates the abandoned Fifth Amendment takings claim.  Moreover, the FAC does not allege the required elements of a § 1983 claim – that government officials, acting under color of state law, caused the deprivation of a federal right.  See Suever v. Connell, 579 F.3d 1047, 1060 (9th Cir. 2009); see also Iqbal, 556 U.S. at 676.  Nor does the FAC state facts sufficient to show a liberty or property interest protected by the Constitution, a deprivation of that interest by the government, or a lack of process.

In particular, the FAC does not allege any facts showing what "lack of process" petitioners/plaintiffs hope to show here – apart from the allegations in the fourth cause of

---

[5] As for PSPOA's assertion that it sought compensation through "state procedures" by filing suit in 2007 in the Sacramento County Superior Court against the California Department of Fish and Game, the court notes that not only was that suit filed well before the Authority initiated the Runway Safety Project at issue in this case, but there is no connection between that case and the facts alleged in the present case.

action for violation of CEQA. Nor are there any facts alleged showing any deprivation of PSPOA's property interest. Any alleged deprivation is entirely speculative – roads that "may" be removed, which "may" result in flooding and impaired access. See, e.g., FAC ¶ 86. Because PSPOA does not allege facts showing that any roads have been acquired – let alone removed – there is no basis for a claim of deprivation of any property belonging to PSPOA.

With regard to the new statutory violation claim under § 1983, based on the alleged violation of URA § 4655, that claim fails for the same reason the § 4655 claim fails. It is clear that if PSPOA cannot state a claim under § 4655, as the court has already found, there is no basis for a § 1983 claim premised on an alleged violation of § 4655. PSPOA argues that because the FAC alleges that both the FAA and the Authority violated the URA – the FAA by failing to obtain "satisfactory assurances" from the Authority, and the Authority by failing to provide sufficient assurances to the FAA to meet the requirements of § 4655 that it would comply with federal acquisition policies – the FAC adequately states a claim of "civil rights violations" under § 1983. However, even had PSPOA included these allegations as part of the § 1983 claim in the FAC – which it did not – such a claim would be unsustainable because, as stated above, there is no private right of action under § 4655, and PSPOA cannot state a claim under § 4655.

In addition, in order to seek redress under § 1983, a plaintiff must assert the violation of a federal "right," not merely the violation of federal "law," see Golden State Transit Corp. v. Los Angeles, 493 U.S. 103, 106 (1989), nor simply the deprivation of statutorily provided "benefits" or "interests," see Gonzaga University v. Doe, 536 U.S. 273, 283 (2002). If Congress wishes to create new rights enforceable under § 1983, it must do so in clear and unambiguous terms. Gonzaga University, 536 U.S. at 280; Blessing v. Freestone, 520 U.S. 329, 341 (1997).

Where the text and structure of a statute provide no indication that Congress intended to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action. Gonzaga, 536 U.S. at 280; see also Sanchez v.

19

Johnson, 416 F.3d 1051, 1062 (9th Cir. 2005) ("After Gonzaga, . . . a plaintiff seeking redress under § 1983 must assert the violation of an individually enforceable right conferred specifically upon him, not merely a violation of federal law or the denial of a benefit or interest, no matter how unambiguously conferred.") (emphasis in original).  Here, there is no indication in the text and structure of § 4655 that Congress intended to create individual rights or provide a basis for a suit, either under § 1983 or under an implied right of action.

## CONCLUSION

The court finds that the first and second causes of action must be DISMISSED.  As PSPOA has already been afforded an opportunity to amend, the dismissal is with prejudice.  The court declines to exercise jurisdiction over the supplemental state law claims for inverse condemnation damages, CEQA violations, and violations of the California Constitution, which are hereby DISMISSED without prejudice to refiling in state court.  See 28 U.S.C. § 1367(c)(3); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350-51 & n.7 (1988); Smith v. Lenches, 263 F.3d 972, 977 (9th Cir. 2001).

**IT IS SO ORDERED.**

Dated:  March 7, 2014

_____
PHYLLIS J. HAMILTON
United States District Judge